UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PATRICIA L.,

                                    Plaintiff,

                              v.

ANDREW SAUL,
Commissioner of Social Security,

                                    Defendant.
_____

DECISION AND ORDER

20-CV-6173L

      Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final determination.

      On August 18, 2016, plaintiff filed an application for supplemental security income benefits, alleging an inability to work at of that date. Her application was initially denied. Plaintiff requested a hearing, which was held on November 27, 2018 before Administrative Law Judge ("ALJ") Asad M. Ba-Yunus. (Dkt. #7-2 at 25). The ALJ issued a decision on December 19, 2018, concluding that plaintiff was not disabled under the Social Security Act. (Dkt. #7-2 at 25-35). That decision became the final decision of the Commissioner when the Appeals Council denied review on January 24, 2020. (Dkt. #7-2 at 1-4). Plaintiff now appeals.

      The plaintiff has moved to remand the matter for further proceedings (Dkt. #10), and the Commissioner has cross moved for judgment on the pleadings (Dkt. #11), pursuant to Fed. R. Civ.

Proc. 12(c). For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

## DISCUSSION

### I. Relevant Standards

Determination of whether a claimant is disabled within the meaning of the Social Security Act requires a five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

### II. The ALJ's Decision

Here, the ALJ found that the plaintiff – forty-seven years old on the alleged disability onset date, with no past relevant work – had severe impairments which did not meet or equal a listed impairment, consisting of migraine headaches, vertigo/dizziness, depression, bipolar disorder, anxiety, and a February 2017 "left ankle bimalleolar equivalent fracture with ongoing residuals status-post March 2017 Open Reduction Internal Fixation (ORIF) surgery." (Dkt. #7-2 at 27).

In applying the special technique for mental disorders, the ALJ found that plaintiff is moderately limited in understanding, remembering, or applying information, moderately limited in social interaction, moderately limited in concentration, persistence, and pace, and moderately limited in adapting and managing herself. (Dkt. #7-2 at 28).

After summarizing the evidence of record, the ALJ determined that plaintiff retains the residual functional capacity ("RFC") to perform light work, with the ability to no more than occasionally balance, stoop, kneel, crouch, crawl, or climb. She can frequently be exposed to

hazards, including unprotected heights and dangerous machinery. She is limited to unskilled, simple, routine tasks with no more than occasional interaction with coworkers and occasional changes to the work setting. Beginning February 21, 2017 (when plaintiff sustained an ankle fracture), she is further limited to sedentary work with occasional balancing, stooping, kneeling, crouching, crawling, and climbing. She can tolerate frequent exposure to hazards including unprotected heights and dangerous machinery, and is again limited to unskilled, simple, routine tasks with occasional interaction with coworkers and occasional changes in the routine work setting. (Dkt. #7-2 at 28-29).

When presented with the initial (light) RFC at the hearing, vocational expert Ja'Nitta Marbury testified that an individual with this RFC could perform the positions of laundry sorter, housekeeper, and label remover. (Dkt. #7-2 at 34). Although the vocational expert did not opine as to whether jobs existed for a hypothetical individual with the more limited (sedentary) RFC after February 21, 2017, the ALJ concluded that the RFC's limitations did not so significantly erode the base of sedentary work as to prevent plaintiff from performing most unskilled sedentary occupations. (Dkt. #7-2 at 34-35). The ALJ thus found plaintiff "not disabled."

### III.   The Medical Opinions of Record

Plaintiff does not challenge the ALJ's finding with respect to her mental limitations (i.e., that her limitations were no more than moderate in any of the four functional areas), but argues that the ALJ's assessment of the medical opinions of record concerning plaintiff's exertional limitations was flawed, and that remand is therefore appropriate.

The Court concurs. The medical opinions of record as to plaintiff's exertional impairments included: (1) several 2015 and 2016 opinions by plaintiff's treating internist, Dr. Miltonia Woluchem, who opined that due to plaintiff's ankle injury, dizziness, and recurrent migraines,

plaintiff was "very limited" (or alternatively, should "avoid prolonged" engagement) in standing, walking, lifting, carrying, pushing, pulling and bending/squatting, and "moderately" limited in sitting (Dkt. #7-7 at 212-13, Dkt. #7-13 at 1283-86); (2) the November 1, 2016 examination of consulting internist Dr. Harbinder Toor, who opined that plaintiff had "moderate" limitations in standing, walking, sitting, bending and lifting, that pain and headache could interfere with her routine, and vertigo could sometimes affect her balance (Dkt. #7-8 at 545-48); (3) the November 13, 2018 opinion of treating neurologist Dr. James Azurin, who opined that plaintiff's migraine headaches occurred 2-3 times per week for 8-12 hours at a time, causing pain, photosensitivity and concentration problems significant enough to preclude her from even basic work activities while symptoms continued, and would cause her to be absent from work about once per month (Dkt. #7-14 at 1401-02); and (4) an October 15, 2018 opinion by treating family nurse practitioner Yvette Talton, who stated that due to back pain, knee pain, and an ankle injury, plaintiff could lift no more than 10 pounds frequently, rarely stoop or squat, never climb ladders, could not variously walk, sit or stand for more than 20-30 minutes at a time or for 2 hours or more in an 8-hour work day, and that plaintiff's migraines caused dizziness and rendered her unable to function until they subsided. (Dkt. #7-14 at 1399-1400).[1]

The ALJ summarized each of these opinions, but found that none of them were entitled to more than "some" or "little" weight. (Dkt. #7-2 at 31-32).

Upon review, I find that the ALJ's rejection of all the medical opinion evidence of record was not sufficiently supported or explained, and created a gap in the record that deprives the ALJ's decision of substantial evidentiary support. Therefore, the matter must be remanded for the purpose

---

[1] The record also contained opinion evidence from plaintiff's treating orthopedic surgeon, Dr. John Gibbs. (Dkt. #7-13 at 1296-99, 1300-1303) The ALJ's decision not to give controlling weight Dr. Gibbs' opinions was not improper, given that his opinions were rendered at the time of plaintiff's ankle injury and surgery, and were not particularly probative of her RFC before the injury, or after she had recovered from surgery.

of reassessing the medical opinions and/or completing the record by obtaining additional medical opinion evidence.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). The record in this case contained treatment records establishing plaintiff's longstanding history of migraine headaches and associated symptoms (and after February 2017, an ankle impairment), as well as depression, anxiety and bipolar disorder. In light of these diagnoses, which the ALJ found to be "severe impairments," a thorough assessment and understanding of plaintiff's mental and physical limitations was necessary in order to reach a disability determination supported by substantial evidence.

In assessing the medical opinions of record, an ALJ is required to consider the factors specified by 20 C.F.R. §404.1527, which include: (1) the nature of the physician's relationship to the claimant – treating, examining, etc.; (2) the supportability of the opinion; (3) the consistency of the opinion with other evidence of record; (4) the physician's area of specialty, if any; and (5) other relevant factors. *Id*. Where the opinion derives from a treating physician (for claims filed prior to March 27, 2017), that opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §404.1527(c)(2).

Initially, the ALJ did not overtly consider the treating status, treatment history, or area of specialty of any of the medical sources of record in weighing their opinions. This is reversible error. *See Wagner v. Commissioner*, 435 F. Supp. 3d 509, 515 (W.D.N.Y. 2020); *Oleske v. Berryhill*, 2020 U.S. Dist. LEXIS 58215 at *18-*20 (W.D.N.Y. 2020).

Furthermore, the reasons given by the ALJ for discounting the medical opinions of record are factually erroneous and legally insufficient. The ALJ first rejected the opinions of plaintiff's treating primary care physician, Dr. Woluchem, because he found them "inconsistent" with plaintiff's treatment records. For example, the ALJ stated that Dr. Woluchem's description of standing, walking, lifting and postural limitations was unsupported, because plaintiff's gait was noted to be "normal" and "there is a clear lack of contributing impairment that correlates to the reports of dizziness." (Dkt. #7-2 at 31).

The ALJ's reasoning is difficult to follow, but the ALJ's suggestion that the record does not support Dr. Woluchem's opinion (that plaintiff's dizziness caused limitations) is, on its face, inconsistent with the ALJ's own finding at step two that plaintiff's vertigo/dizziness was a severe impairment. Indeed, the record contained ample support for the proposition that plaintiff's dizziness impacted her ability to perform work-related functions: other treating and examining sources, including Dr. Toor and nurse practitioner Ms. Talton, made similar findings of dizziness, and suggested similar limitations to account for it, in their assessments. Nor was specialized medical evidence strictly necessary to connect plaintiff's vertigo/dizziness to the standing and walking limitations identified by Dr. Woluchem: the logical connection between vertigo/dizziness and impaired ability to balance, stand or walk can be readily appreciated by a layperson.

The ALJ's explanation for rejecting the opinion of consulting internist Dr. Toor is similarly deficient. The ALJ found the opinion to be of "minimal" probative value, due to the fact that Dr. Toor considered plaintiff's reported medical history in his assessment (rather than relying solely on his own diagnoses), and made "drastic clinical findings" that the ALJ found incredible, such as measuring only 20-30 degrees of spinal flexion (bending forward) and zero degrees of spinal extension (bending backward). (Dkt. #7-2 at 31, #7-8 at 547).

6

Initially, the ALJ's rejection of Dr. Toor's opinion – not because of any internal inconsistency or on the strength of any contrary evidence, but solely because of the ALJ's speculative notion that Dr. Toor's *objective clinical findings* were too "dramatic" – amounted to an improper substitution of the ALJ's lay opinion for Dr. Toor's competent medical judgment. *See Merritt v. Commissioner*, 2019 U.S. Dist. LEXIS 188191 at *13-*14 (W.D.N.Y. 2019)(where ALJ improperly substituted his own lay opinion for competent medical evidence in formulating claimant's RFC, his decision is not supported by substantial evidence and remand is required); *Kelsey O. v. Commissioner*, 2018 U.S. Dist. LEXIS 107656 at *18 (N.D.N.Y. 2018)(ALJ's rejection of consulting examiner's opinion that plaintiff required an inhaler, based solely on the ALJ's interpretation of the examiner's "normal" chest and lung examination findings, was an improper substitution of lay opinion for medical expertise, and required remand).

Dr. Toor thoroughly examined plaintiff, summarizing her medical history and making objective, contemporaneous assessments of, e.g., her gait, squat, spinal flexion and extension, range of motion in all extremities, strength in all extremities, reflexes, fine motor coordination and grip strength. The exertional and postural limitations opined by Dr. Toor are not inconsistent with the objective results of this examination, and the ALJ set forth no acceptable reason for rejecting them.

With respect to Dr. Azurin's statement concerning the impact of plaintiff's migraine headaches, the ALJ afforded it "very little weight" due to its alleged inconsistency with plaintiff's treatment records, which contained "no real clinical or diagnostic evidence to add support [to the idea that plaintiff's migraines caused functional limitations] and treatment frequency does not appear to correlate to the allegations presented." (Dkt. #7-2 at 32).

The ALJ did not identify how plaintiff's treatment records were inconsistent with Dr. Azurin's opinion. To the contrary, the treatment records evidence regular, ongoing treatment sessions with Dr. Azurin over at least a two-year period, with continued complaints of unresolved migraine headache symptoms despite multiple medications.

In sum, the ALJ's assessment of the medical opinions of record, and the reasons he provided for rejecting them, were insufficient. Even assuming *arguendo* that the ALJ had properly assessed the medical opinion evidence when he opted to reject the bulk of the exertional limitations specified therein, the rejection of those opinions created a gap in the record. In that event, the ALJ "should have sought a conclusive determination from a medical consultant" who was able to review the record and perform an in-person evaluation of plaintiff. *Falcon v. Apfel*, 88 F. Supp. 2d 87, 90 (W.D.N.Y. 2000). *See also* 20 C.F.R. §404.1519a(b)(4) (an ALJ must order a consultative examination when a "conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved"); *Aurilio v. Berryhill*, 2019 U.S. Dist. LEXIS 157839 at *23 (D. Conn. 2019)(where ALJ rejects all medical opinions in the record, an evidentiary gap is created); *Smith v. Commissioner*, 337 F. Supp. 3d 216, 226 (W.D.N.Y. 2018)(where the ALJ rejects all medical opinion evidence and the record "does not contain a useful assessment of [p]laintiff's limitations," remand for development of the record is appropriate).

Because I find that remand is appropriate, I decline to reach the remainder of plaintiff's arguments.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. #10) is granted, and the Commissioner's cross-motion (Dkt. #11) is denied.

The Commissioner's decision that plaintiff was not disabled is reversed, and the matter is remanded for further proceedings. Upon remand, the ALJ is instructed to reassess all of the medical opinions of record, applying the relevant factors and giving detailed reasons for the weight given to each. In the event the ALJ does not credit the limitations described therein, the ALJ should request RFC reports (and, to the extent he deems necessary, updated treatment records) from plaintiff's treating source(s), and/or to order consultative examinations, sufficient to permit the redetermination of plaintiff's RFC and disability status upon a full and complete record.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       April 21, 2021.